## Deitzler *versus* Mishler *et al.*

*Judicial Sale of Equitable Title.—Parol Explanation of Express Trust.—Rights of Surety to Equitable Title of Principal.—Equitable Ejectment.*

1. Several parties united in the purchase of land, and gave their joint bonds, representing each one's share of the purchase-money, to one of their number, in whom the legal title was vested as their trustee. The interest of one of them, who had paid no portion of his bond, having been levied and sold by the sheriff, it was *held*, that the sale passed no interest in the land, and that no equity arose out of the transaction tangible for a judgment-creditor to seize or sell.

2. Where the plaintiff had given in evidence what was claimed to be an express trust, executed by the holder of the legal title, evidence on the part of the defendant, explanatory of the transaction out of which the alleged trust grew, as to the intention of the parties, and the terms and effect of the trust, was held to be admissible; as also evidence that the purchaser, under whom plaintiff claimed, had no title in the land, (of which notice was given before the sale), that he had made no payment, nor offer of payment, of his share of the purchase-money, and that he had by parol waived all his right on account of the purchase.

3. On failure of one of the joint purchasers to pay his share of the purchase-money, the sureties in his bond, who were his associates in the original purchase, paid it. It was held, that an equitable title to his share in the land became thereby vested in them, and that until such purchase-money, with expenses and costs, was reimbursed to them, neither he nor those claiming under him could demand a conveyance from the trustee, or a declaration of trust in his favour.

4. Ejectment on an equitable title is in substance a bill for specific performance, and is therefore governed by general principles of equity.

ERROR to the Common Pleas of *Lancaster county*.

This was an action of ejectment brought by Benjamin Mishler and Emanuel Shober against Melchior Deitzler, John Shaeffer, David Hostetter, John Hostetter, Daniel Brandt, and William Gleim, to recover the one undivided sixth part of twelve hundred acres of land in Elizabeth township, Lancaster county.

The plaintiffs claimed title under a sheriff's deed to them of the interest of one Dr. J. H. Kurtz in the said property, and in support of their claim offered the following evidence:—

[Deitzler *v.* Mishler *et al.*]

1. Deed from Coleman and wife to John Shaeffer, dated November 12, 1852, for the twelve hundred acres of land above mentioned.

2. A declaration of trust by John Shaeffer, dated Nov. 29, 1852, in which the conveyance to him by Coleman and wife was recited, with the fact that the purchase-money was "paid or secured to be paid" by himself, David Hostetter, John Hostetter, Daniel Brandt, Dr. Jacob Kurtz, and William Gleim, in consideration of which he declared that he held the legal title in trust for said purchasers in fee, "as tenants in common in equal interest, shares, and parts," and binding himself, at the request of either of the other tenants, to convey to each his undivided sixth part, unencumbered, &c.

3. The record of a judgment in favour of J. H. Reed & Co. against Dr. J. H. Kurtz, entered September 8, 1857, for $500, with the *fi. fa.*, levy, condemnation, *vend. exp.*, and sheriffs' deed to them of his interest in the said lands.

The defendants then offered to prove, that the property in question was purchased on the joint credit of John Shaeffer, Daniel Brandt, J. H. Kurtz, John Hostetter, David Hostetter, and William Gleim, who all gave their joint and several bonds, of $4000 each, for the payment of the purchase-money. That the deed was made to John Shaeffer alone, who was to execute declarations of trust in favour of each of the others, each of whom was to receive his own declaration separately from the others. That the bonds were all executed in favour of the Lancaster Bank, and put into the hands of the trustee, with which to raise the money to pay for the land, which was accordingly done, and the money thus raised all paid by the trustee to the vendor. That the trustee took possession of the property, with the consent of the *cestui que trusts*, and made valuable improvements thereon, paying the taxes, and managing the whole property. That J. H. Kurtz never paid anything toward the improvements, nor one cent of the purchase-money or bonds. That the trustee never executed and delivered to him, or to any other person for him, his declaration of trust. That the one recorded was prepared for William Gleim alone, and was procured by him and put on record. That in the summer of 1857, Dr. Kurtz found himself in failing circumstances. He had an interview with the trustee, and told him he was unable to pay his part of the purchase-money, and that he would claim no interest in the land, but that it should belong to the trustee and those who had to pay the money. This was before the entry of the judgment on which the property was sold. Dr. Kurtz afterwards reduced the same declaration to writing, to be put on record, dated 26th October 1857. Dr. Kurtz never demanded a conveyance from the trustee, but when he found himself unable to pay his part

of it, expressly agreed that he never would demand it. Neither Dr. Kurtz nor the plaintiffs ever tendered nor offered to pay the purchase-money, nor for the repairs, or any part thereof. Before the plaintiffs purchased the property, they received express notice that Kurtz had no interest in the same, and the defendants' title was distinctly set forth in said notice. The defendants, Shaeffer and his associates, have paid the whole purchase-money, including Kurtz's share, and no part has ever been reimbursed them.

The court rejected this offer, to which ruling defendants excepted.

Under the instruction of the court that the plaintiffs were entitled to recover, a verdict was rendered in their favour, for one-sixth of the premises, and judgment being entered thereon, the defendants sued out this writ, and assigned for error the refusal of the court to allow them to prove the matters above stated.

The case was argued by *Thaddeus Stevens, N. Ellmaker*, and *W. R. Wilson*, for plaintiffs in error ; and by *T. E. Franklin, J. B. Amwake, J. E. Keister*, and *G. W. McElroy*, for defendants in error.

The opinion of the court was delivered, October 3d 1860, by

THOMPSON, J.—The plaintiffs must have recovered below, either on the ground of an express trust in favour of Dr. Kurtz, or on an implied or resulting trust arising out of a supposed payment of purchase-money : for the legal title was in the defendants, and would necessarily prevail, unless overcome by a well-defined and overpowering equity.

The plaintiffs gave in evidence what they claimed to be an express trust, executed by Shaeffer, the holder of the legal title, and which, unimpeached and unexplained, would have had a decisive effect. To meet this, the defendants offered to prove that the instrument claimed as the declaration of trust was executed and delivered to another of the joint purchasers, and had no relation to the interest of Dr. Kurtz : and farther to show, that separate declarations of trust were to be executed to each of the joint purchasers of the property, by Shaeffer; and that, before the sheriffs' sale, the plaintiffs had full notice that Kurtz had no interest in the land, had paid no part of the purchase-money, and that it had been paid by his associates in the purchase, who were jointly obligors in the bond, although in fact but sureties for him.

Why was not this evidence competent ? Does not a party who buys a title with notice that it is worthless, take the risk of the invalidity of the muniments ? And a purchaser with notice

[Deitzler *v.* Mishler *et al.*]

that a deed had never been delivered, especially when the alleged vendor remains in possession, would surely not cut his adversary off from proof that it never had been delivered. If a contrary doctrine had any foothold in law, then would a deed fraudulently obtained be as effective as if honestly executed and delivered,— a principle which needs only to be stated to be discarded. The case in hand is this in substance, neither more nor less. And the evidence offered to show a want of execution and delivery of the declaration of trust should not have been rejected. If believed, it would have established its invalidity in its application to the interest of Dr. Kurtz, which was a step towards proving the truth of notice to the plaintiffs, or want of title in the Doctor. It was error to reject it.

The purchase of the land from Coleman was a joint purchase, and the form of it was a means of raising and securing the payment of the amounts each was to pay. The bonds were all discounted at the Lancaster Bank, upon the credit of the signatures of all the parties, and the money raised paid for the land. But as between themselves, each one of the parties was a principal in a bond, and the others his sureties. The deed for the land, as admitted, was executed to Shaeffer on the implied trust to hold for those beneficially interested. No trust was expressed on its face, but it was understood that declarations of trust should be separately executed in favour of each of the parties. Equity will, under such circumstances, regard the legal title thus held by Shaeffer as security for all as well as in trust. And it will ascertain whether the party who seeks a conveyance from the trustee, or a recovery in ejectment, has done equity; whether he has paid his share of the purchase-money or not. If not, it would not be conscionable to give him a title which others had paid for. The form of the transaction does not preclude an inquiry into its substance. The bond of Dr. Kurtz was not payment; it was not understood among the parties to be such; it was but a means of procuring time for payment, and cannot stand for payment so as to raise a resulting trust. Why? Simply because his undertaking to pay his share of the purchase-money failed. His associates have paid it, and until they are reimbursed, neither they nor their trustees can be called on for a conveyance, or to surrender possession to him as co-tenant. The primary object of the parties evidently was, that equal payments should result in equal interests, and the form of the transaction was, as has been seen, to furnish security for this; and nothing could better insure this than the plan adopted of placing the legal title in the hands of one of their number, for he could not be compelled to part with it only on equitable grounds: 8 S. & R. 87; Hill on Trusts 570; 1 Binn. 126. So that, until each of the associates made good the pay-

[Deitzler *v.* Mishler *et al.*]

ment of his share of the purchase-money, for which all were bound, he could not demand a conveyance or a declaration of trust in his favour. Ejectment on an equitable title is in substance a bill for specific performance, and is governed by general equitable principles.

The offer was to show that Kurtz paid no part of his bond, which was, by the arrangement, his share of the purchase-money, and that his associates did pay it. The plaintiffs occupying Kurtz's position in regard to the title, having derived theirs through him, were in no better position than he was. If *he* could not claim, *they* could not. If, for the want of payment, there was no resulting trust in his favour, none could be claimed by them. There is no such thing as a resulting trust but on the terms of payment of the consideration for the trust: 1 Cruise 311, tit. *Trust*; 1 Story, Eq. Juris. 35, 439, 445. Without this a chancellor cannot be moved at all. The proof that this was wanting was therefore material, and should have been received.

But supposing the trust still executory, and that Kurtz might have paid or tendered payment to his co-obligors, they being the equitable owners of the land by payment for it, the plaintiffs were bound, before they would be entitled to recover, to do the same thing, 8 S. & R. 484, and to pay his share of expenses on account of taxes, and improvements made with the assent of his associates. They were bound to offer all this, and bring the money into court, together with the costs accrued, to make their equity available. It is an axiom of equity jurisprudence, that a party who asks equity must do equity, and it certainly would be contrary to good conscience to administer it on any other grounds. Following this rule, it was part of the offer to prove that no payment or offer of payment had been made by the plaintiffs, and, although this should have appeared on their part, if they claimed on any other ground than that of an express trust, yet it was not irrelevant proof on part of the defendants, as showing how the equities stood, and also as applying to the question of the execution of the supposed express trust: it was therefore competent, and it was error to reject it.

Was the testimony in regard to the waiver by Kurtz, of claim on account of the purchase, evidence? What equity had he, when the judgment was entered, if there was no express trust, which it was proposed to disprove? I think none. He had yielded up his right to perfect an equity, prior to that time, by parol. He had no other interest than this. The trust existed by parol, and he had acquired no equity under it. It may be conceded that he had a right to perfect it; but would not his parol waiver of it be a sufficient answer in equity to a bill for a specific execution of it? This is clearly ruled in many cases,

[Deitzler *v.* Mishler *et al.*]

but I will refer only to Raffensberger *v.* Cullison, 4 Casey 424, and cases therein cited as decisive of the point. And I will further say, as was said there, that if the plaintiffs' offer is made good, " no equity ever resulted out of the transaction before us tangible enough for a judgment-creditor to seize or sell." The evidence on this point of the parol waiver should also have been received.

Judgment reversed, and *venire de novo* awarded.