# Maple *versus* Kussart *et al.*

1. A husband and wife were seised of an estate by entireties. The husband by will directed the land to be sold and the proceeds divided amongst his wife and children, and died leaving his wife and a number of children. Having named no one to make the sale, the land was sold under an order of the Orphans' Court and bought by two of the children, at the request of the widow, who received her share of the proceeds in accordance with the will. After her death, in ejectment for the land by some of the heirs, *Held,* that they were estopped by her acts.

2. If she had been ignorant of her rights, she would be estopped upon the principle that when one of two innocent persons must suffer, it shall be he who caused the injury.

3. One who encourages another to purchase land and expend money upon it, cannot set up a better title in himself to defeat the purchaser.

4. Silence alone will not postpone unless where it is a fraud, but positive

acts of encouragement without a fraudulent intent will bar the assertion of a right.

5. It would make no difference, that the purchaser might have discovered the defect of title had he made inquiry; he has been put off his guard.

6. A party cannot have the price of land sold and the land itself.

7. If one receive the purchase-money he affirms the sale, whether it were void or only voidable.

ERROR to the Court of Common Pleas of *Greene county.*

This was ejectment by Stephen Maple and others, heirs at law of Elizabeth Maple, deceased, against Philip Kussart and George Weaver.

The land in dispute was, on the 27th day of February 1849, conveyed " *to Thomas Maple and Elizabeth his wife, and to their heirs and assigns.*"

Thomas Maple died September 12th 1849, having made his will, dated August 20th 1849, by which, after a number of bequests, he provided:—

" And my will is that all the *remainder* of my estate be disposed of as soon after my decease as convenient, and to be disposed of to the best advantage of the heirs, either by keeping it in the family at a fair valuation or selling it publicly or by private sale as may be judged best, and the division of the proceeds to be as follows:

" I give and bequeath to my wife Elizabeth two shares, to my son Stephen two shares, to my son Thomas two shares, to my son John two shares, to my son Simon two shares, to my son Joseph two shares, to my son Lewis two shares, to my son Andrew I. two shares, to my daughter Rebecca Parrish one share, to my daughter Nancy Orr one share, to my daughter Sarah McGuire one share, to my daughter Elizabeth Ray one share and to my daughter Lydia Maple one share, and further, each single share to be of the same amount, each of my sons receiving just twice as much as each of my daughters.

" And further, I do constitute and appoint Stephen Maple, Jonas Maple and Samuel C. Orr, executors of this my last will and testament."

As no person was named in the will to execute the power of sale, the executors applied to the Orphans' Court for an order to sell, which was granted, and by virtue of it they sold the land in controversy to William S. Paul for $6410. The sale was confirmed May 14th 1850; the next day the executors delivered Paul a deed and on the same day he conveyed the land, for the same consideration, to Thomas Maple, a son, and Samuel C. Orr, a son-in-law of the testator and Elizabeth Maple, his widow;—Orr being also one of the executors of the will, which was the reason the conveyance was made in the first instance to Paul.

[Maple *v.* Kussart.]

It appeared that the widow, Elizabeth Maple, urged the pur-chasers to buy so that the land might remain in the family and that she might have a home there;—that they bought it with some reluctance, at her request;—that she declared her satisfac-tion with the sale after it was made, and received from the exe-cutors her share of the proceeds, in accordance with her husband's will, and gave them receipts for the money as her " distributive share." The other legatees also received their shares of the purchase-money from the executors. After the executors' sale, Thomas Maple and Orr took possession of the property and occu-pied the whole of it; the widow lived on the place till her death in 1855. Thomas Maple and Orr conveyed the land in 1860, and the defendants derive title under this conveyance.

The paper-book does not show when the writ in the case was issued, nor what were the names of all the plaintiffs; from the evidence it appeared that all did not join in the suit.

In answer to points of the plaintiffs, the court below (Gilmore, P. J.) charged, " that the title to the land survived to Elizabeth Maple, on the death of her husband; that if the evidence satisfied the jury ' that the acts and declarations and receipt of the money by the widow was restricted to the interest of her husband,' they ' did not divest her title nor estop her or her heirs from asserting her title to the land.'."

In answer to another point of the plaintiffs the court charged, " If the evidence is believed, it is sufficient to work an estoppel."

There was a verdict, June 16th 1866, for the defendants.

The answer to the plaintiffs' 4th point was assigned for error.

*R. W. Downey,* for plaintiffs in error, cited Co. Litt. 187, 2 Bl. Com. 183; Doe *v.* Parratt, 5 T. R. 652, 2 Vern. 233; Johnson *v.* Hart, 6 W. & S. 322; Stuckey *v.* Keefe, 2 Casey 397; Martin *v.* Jackson, 3 Id. 504; Bates *v.* Seely, 10 Wright 248; Auman *v.* Auman, 9 Harris 343; Robb *v.* Beaver, 8 W. & S. 107; Fairchild *v.* Chastelleux, 1 Barr 177; Hamm *v.* Meisen-helter, 9 Watts 349; Frankenfield *v.* Gruver, 7 Barr 448; Diehl's Appeal, 9 Casey 406; Paul *v.* Squibb, 2 Jones 296; Riddlesberger *v.* Mentzer, 7 Watts 141; Shurtz *v.* Thomas, 8 Barr 359; Thomas *v.* Harris, 7 Wright 231; Bashore *v.* Whisler, 3 Watts 490; Robinson *v.* Justice, 2 Penna. R. 19.

*Wyly & Buchanan,* for defendants in error, cited Wilson *v.* Bigger, 7 W. & S. 127; Smith *v.* Warden, 7 Harris 424; Stroble *v.* Smith, 8 Watts 280; Crowell *v.* Meconkey, 5 Barr 176; Spragg *v.* Shriver, 1 Casey 287; Commonwealth *v.* Shuman, 6 Harris 346; Paul *v.* Squibb, 2 Jones 299; Robinson *v.* Justice, 2 Pa. R. 19.

[Maple *v.* Kussart.]

The opinion of the court was delivered, January 7th 1867, by

STRONG, J.—If the plaintiffs could succeed in recovering from the defendants the land in controversy, they would perpetrate a great wrong through the instrumentality of the law. In common honesty they have not a shadow of right to the property, and their attempt to eject the defendants is practically a fraud. They claim as heirs of Mrs. Maple. As such, they stand in no better position than she would have stood in were she now living. What would have barred her recovery will bar theirs now.

No doubt the mill tract was the property of Mrs. Maple after the death of her husband, and no sale of it as his property could divest her ownership. Had she done nothing to estop her from asserting her title, the defendants could not have held against her in her lifetime, nor could they hold against her heirs now. But there may be rights which the law does not permit to be asserted, and such the court below held to be the rights of the plaintiffs.

By his will, Thomas Maple, the husband of Mrs. Maple and the father of the plaintiffs, after making certain devises and bequests, directed that all the remainder of his estate be disposed of as soon after his decease as convenient, and be disposed of to the best advantage of the heirs, either by keeping it in the family, at a fair valuation, or selling it publicly, or by private sale; and the proceeds he directed to be divided in certain proportions to his wife and children. The power to sell not having been given to any person by name or description;—after his death, the executors of the will made a sale of the mill tract, under the control and direction of the Orphans' Court, to William S. Paul, who bought for a son and son-in-law of Mrs. Maple, and who immediately conveyed to them for the same consideration for which the property was struck off to him. It is manifest that all parties at that time thought the land belonged to the estate of the deceased testator. Not only was it sold as a part of his estate, but it was bought as such; even the widow herself being under that impression. The proof is, that she urged the purchaser to buy that the property might remain in the family; and it was at her request they bought. They paid the purchase-money, $6410, and it was distributed to the widow and heirs of the testator, now the plaintiffs, in the proportions directed by the will. All the distributees gave receipts for their shares of the avails, both of the mill property and of the other real estate.

Now, in view of the fact that by her active solicitations the widow induced the purchasers to buy, and to pay their money for the land, expecting to obtain a good title, how could she turn around now and deprive them of the fruits of their purchase, even if it be conceded she was mistaken as to her own rights? Both she and they were mistaken. At the time of the sale they all thought the property a part of the estate of her deceased

[Maple *v.* Kussart.]

husband.   The purchasers could have had no more knowledge of
her rights than she had.   Her acts and declarations are not to be
shorn of their significance by confining their operation to some
supposed interest of her husband, apart from her ownership of the
land.   She desired her son and son-in-law to buy at the sale,
rather than a stranger, that the property might be kept in the
family.   It was then the entire ownership that she urged them to
buy at that sale ; and so the jury under the instructions of the
court must have found.   How then, were she living, could she
escape from the application of the principle, that when one of two
equally innocent persons must suffer, that one must bear the loss
whose act occasioned it ?   It is to be observed that she was not
merely a silent witness of the purchasers' mistake ; she was active
in leading them into it.   After what she said, they would natur-
ally suppose she had no claim to the property.   Our books are
full of the doctrine, that one who encourages another to purchase
land and to expend money upon it, shall not be permitted to set
up a better title in himself to defeat the purchaser.   Silence
alone will not postpone unless in cases when it is a fraud ;
but positive acts of encouragement bar the assertion of a right,
even though they were done with no fraudulent intent.   Nor does
it make any difference that the purchaser might have discovered
he would acquire no title by his purchase had he made diligent
inquiry.   He has been put off his guard, and induced perhaps to
make no inquiry by the words of encouragement he has received.

These principles apply in all their strength to the present case,
and the defendants have also additional protection in the fact that
the widow and heirs received their shares of the proceeds of the
sale of the mill property, shares to which they were not entitled
in equity at least, if the purchasers took nothing by their pur-
chase.   It is a maxim of common honesty, as well as of law,
that a party cannot have the price of land sold, and the land
itself.   Accordingly, it has been ruled uniformly, that if one
receive the purchase-money of land sold he affirms the sale, and
he cannot claim against it whether it was void or only voidable :
Adlum *v.* Yard, 1 Rawle 163 ; Wilson *v.* Bigger, 7 W. & S. 127 ;
Crowell *v.* McConkey, 5 Barr 168 ; Stroble *v.* Smith, 8 Watts
280 ; Smith *v.* Warden, 7 Harris 424 ; Commonwealth *v.* Shu-
man's Administrator, 6 Id. 346 ; Johnson *v.* Fritz, 8 Wright 449 ;
Spragg *v.* Shriver, 1 Casey 282.

It has been argued, however, that the sale of the mill property
having been made under the direction of the Orphans' Court,
was a judicial sale, to which the maxim " caveat emptor" is appli-
cable ; hence, that the purchasers were bound to pay their bid at
any rate, and that they were not injured by the widow's receipt
of the money.   That the maxim quoted applies to Orphans' Court
sales for the payment of debts is certain.   Perhaps it may also to

[Maple v. Kussart.]

sales in partition; but in the latter class of cases the parties warrant the title to each other. It is therefore not clear, that when a sale is made to one of the parties for the sake of partition, that he may not set up a failure of title as a defence to the claim of the other parties for their proportion of the price. In the present case, the sale was made for distribution among the widow and children, and the purchasers were a son and son-in-law. It may perhaps be questioned whether they were bound at all events to pay their bid. But however this may be, this class of estoppels does not rest upon the fact that the purchaser is injured by the receipt of the price by him who seeks to ignore the sale. It is rather a case of election. In several of the cases reported, the purchasers acquired title under judicial sales. They paid their money as they were obliged to pay it, and a subsequent distributee who received it was held estopped thereby from assailing the title acquired. Such was McPherson v. Cunliff, 11 S. & R., 426; Stroble v. Smith, Crowell v. McConkey and Mitchell v. Freedley, 10 Barr 208. It is to be observed that Mrs. Maple received her share, knowing that it was the price of what was supposed to be the entire ownership of the mill property. Adopting the language of this court in Wilson v. Bigger, 7 W. & S. 127, " it would shock the moral sense if she, or her heirs claiming through her, were permitted not only to encourage a sale, but to receive the purchase-money, and afterwards to keep that money, and recover the property and improvements. The court, therefore, correctly answered the plaintiffs' 4th point.

Judgment affirmed.