Witman *v.* Webner et al., Appellants.

Argued November 17, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Samuel E. Bertolet,* and with him *John B. Stevens, Charles H. Weidner, William E. Fisher, Dawson H. Muth, John W. Forry* and *L. H. Heist,* for appellant. A court of equity will refuse its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Tozier v. Brown, 202 Pa. 359; Stevens v. Del. Lacka. & W. R. R. Co., 278 Pa. 284; McGrann v. Allen, 291 Pa. 574.

*Jos. R. Dickinson,* and with him *Ira G. Kutz,* for appellee, cited: Schroeder 1. Gulf Ref. Co. (No. 1), 300 Pa. 397; Gasner v. Pierce, 286 Pa. 529; Schuldt v. Reading Trust Co., 292 Pa. 327.

OPINION BY TREXLER, P. J., March 3, 1933:

Irene Witman brought two actions of ejectment; one to recover possession of property at No. 542 N. Third Street, Reading, Pa., and the other on the southeast corner of Second and Franklin Streets, Reading. The latter is the property involved in the present appeal. In each case judgment was entered in favor of the plaintiff, in one, on a directed verdict for the plaintiff, and in the other n. o. v. after a directed verdict in favor of the defendants.

Ludwig G. Webner was the owner of a large property at Second and Franklin Streets, which included the present Second Street property. He and his wife Irene, on September 16, 1871 delivered a deed of trust to J. H. Jacobs for the property in which it is set out that the said Jacobs "shall allow and permit

the said Webner and Irene, his wife, to hold the possession of the real estate, or to enjoy the rents, issues and profits—for the term of their natural lives and the life of the survivor of them. The same to be for the maintenance and support of themselves and of the children lawfully begotten by the said Ludwig G. Webner, without being in any way liable for any debts or engagements which the said Ludwig G. Webner, or his wife may hereafter contract or be liable for." It is further provided that after the death of Webner and his wife, Jacobs shall grant and convey the real estate in fee simple to the children now living or that may hereafter be born to them. There was also a provision that upon the written request of either Ludwig G. Webner and Irene, his wife, or the survivor of them the said Jacobs shall have the power to sell the whole or any part of the real estate, and that the purchase money derived from such sale be held subject to a trust, and the interest and income to be enjoyed by them during their joint lives or the survivor of them.

In 1874 Webner's wife got an absolute divorce from him. In 1876, his former wife not joining, Webner requested Jacobs to sell a *portion* of the property at Second and Franklin Streets, and the court authorized the sale, which was made and approved, and the proceeds invested in a mortgage, the interest to be paid to Ludwig G. Webner, and should Webner die before the maturity of the mortgage, the income was to be paid to Jacobs for the uses and purposes mentioned in the deed of trust. Webner's former wife, the other party to the original deed of trust, was not made a party to these proceedings, but her counsel admits that she had knowledge of them. About October, 1877, plaintiff, the divorced wife of Webner, married William F. Witman. In 1882 Webner and Jacobs petitioned the court to reinvest the sum so held in mortgage and that real estate should

be purchased by it. This was done and $2500 was paid to Charles L. Hoff, who then deeded 542 N. Third Street, referred to in the first paragraph above, over to J. H. Jacobs in trust for the same purposes as in the original deed given by Webner and his then wife.

In 1887 Webner married the defendant, Anna S. Webner, and had by her two children, who with her are defendants in the present actions. He died in 1920. His widow, Anna S. Webner, in January 1929 leased the unsold portion of the Second Street property to one Ernesto for a term of 15 years and in the same year, a little later, the two children made a lease auxiliary to the first containing an option to buy for $9,000. Ernesto thereafter leased the premises for five years to other parties, who made substantial improvements on the premises, erected a gas station, and paid the rents to Anna S. Webner.

William F. Witman, husband of Irene Witman, the divorced wife of Webner, died in 1930, and in February 1931 plaintiff brought the present suits. Plaintiff is 78 years old. After her divorce she never made any claim of any kind on her husband for any share of any of the property mentioned in the original deed of trust, or of its proceeds, or of the reinvestments occasioned by the sale of portion of the Second Street property.

(1) The first objection made by the defendants is that the party plaintiff had no right to bring the suit; that it should have been brought in the name of Jacobs, trustee, or, he having died, in the name of a successor appointed by the court. The court below held and counsel for both parties concede that this was not a dry trust, that it remains active as long as Irene Witman lives and upon her death may become dry; citing Sheaff's Estate, 231 Pa. 251, 80 A. 361. However, this may be, the trustee's activities could never be exercised in controlling or impairing the right of possession of Webner and his first wife under the

original deed of trust. They were to hold the possession of the real estate and enjoy the rents, issues and profits. So far as their possession was concerned it was to be exercised without any let or hindrance by any one. Our attention is called to the case of Chamberlain v. Maynes, 180 Pa. 39, 36 A. 410; in which a trust was created very similar to the one we are considering. The court held that the trust was created "to preserve the remainders and that was the extent of its real purpose." As far as securing the possession for the cestuis que trustent the trustee was not a necessary party and had no duties to perform. Ejectment is a possessory action, and equitable right to the possession of land is all that is necessary to enable the plaintiff to recover in such action. This has been the law in Pennsylvania. The first pronouncement of it is in Presbyterian Congregation v. Johnston, 1st W. & S. page 9; followed by Ohio Riv. Junc. R. R. Co. v. Penna. Co., 222 Pa. 573, 585, 72 A. 271; Deitzler v. Mishler, 37 Pa. 82; and Johnson v. McCue, 34 Pa. 180. The establishment of the trust was merely to hold the title during the lifetime of the cestui trust and to provide a method for the changing of the property so held, but there is not a word in the deed which enables any interference with the direct personal possession of all the income from the property, or the possession of it. We think the widow of the original grantor of the deed had the right to bring a suit in ejectment in order to recover possession of the property in question.

(2) The appellants' next position is that plaintiff being out of possession for 57 years, divorced from her husband and remarried, and aware of the adverse possession and control of the present defendants, and of her former husband, and "knowing" (?) that during said period valuable improvements had been made, and making no claim during this entire period, cannot now maintain this suit. As the appellants present the subjects of laches, and abandonment as separate

questions, we are, for the moment, considering only the subject of adverse possession, although that necessarily involves to a certain extent the other questions. As long as Webner lived there could be no possession held by him adverse to his wife, and this is so even after she obtained a divorce. There can be no adverse possession of joint tenants, the possession of the one is the possession of both, and if there were any adverse possession it would start from the time in 1920 when her former husband died and his children by his second wife took charge of the property of which he had physical possession at the time of his death, and such adverse possession would have continued for only eleven years.

The lower court correctly held that there was no element of adverse possession in his enjoyment of the property. "The proceedings to sell and reinvest, in 1876, could not be held to evince a definite intent to hold the possession adversely to any claim of the other tenant, because Ludwig's request to the trustee was for a reinvestment 'under the terms and for the purposes mentioned in said deed of trust;' ...... Her interest as tenant by the entireties was not legally incompatible with his receiving the income, for which he might be accountable. It is reasonably urged that the proceedings actually and expressly, though not specifically, assert and maintain the rights of the plaintiff. This inference is much strengthened by the later proceedings, in 1882, when Ludwig Webner and the trustee petitioned that the mortgage moneys which had been paid should be reinvested in the Third Street real estate. In these proceedings nothing appears adverse to plaintiff, and the deed of Hoff to the trustee, while reciting the divorce and the previous proceedings, conveys the property 'in trust for the same trust purposes and estates ......' (referring to the trust deed of 1871),' ...... to wit, in trust for the said (grantors) to enjoy the rents, issues and

profits of the same for and during the term of their natural lives and the survivor of them, and after the death of said survivor, 'in fee simple to the children of the said Ludwig G. Webner.' ''

The court calls attention to the fact that the deed to the Third Street property recites the very words of the original deed of trust and gives the enjoyment of the rents, issues and profits to the grantors in said deed and the survivor. This was a recognition of her continuing interest in the trust.

(3) Was the plaintiff guilty of laches? This is answered by what we have said in regard to adverse possession except that it is urged that she should have demanded her share of the property, or its proceeds when she received her divorce from Webner, and that thereafter, she should have asserted her rights when her former husband obtained permission for the trustee to pay the income exclusively to him. It is argued that she permitted, without protest, leases to be entered into and extensive improvements made on the property, and waited until her husband died before she made any move to assert her rights. No laches can be imputed for any of these reasons. Her remarriage did not affect her rights. They remained as set forth by the deed of trust. The order of court permitting the money to be reinvested and the income paid to Webner did not affect her for she had not her day in court. The fact that she had knowledge that some such proceedings were in progress did not bind her by the judgment entered. How far her knowledge extended does not appear. As to her permitting improvements to be made, there is no evidence that she knew anything about the leasing of the property or of the improvements made thereon. There is not a particle of testimony that she by any act encouraged any one in expending money. Mere silence, under these circumstances, will not bar from a subsequent assertion of right. Maple v. Kussart,

53 Pa. 348. Neither has her second husband's death any thing to do with the matter. We may surmise that as long as he lived she did not need any additional source of income, and when he died perhaps necessity impelled her then to seek some means of support.

(4) Has she abandoned her rights? We need add very little to what we have said. She certainly did not abandon her rights during the lifetime of her first husband. She might have made no effort to obtain her share of the income of the trust but even that would not indicate her relinquishment of her right to the entire possession and income, as a survivor. There is an entire absence of any act on her part indicating any intention to abandon her rights in the properties in question.

The lower court properly held that under the evidence submitted, the status of the plaintiff had to be determined by the deed of trust and that the rights conferred upon her therein are still existing, and that there was no proof of abandonment or adverse possession or laches to submit to a jury.

The judgment is affirmed.