## In re Merion Title & Trust Company

*Thomas Hallman,* for exceptant.

*Samuel H. High, Sr.,* contra.

KNIGHT, P. J., April 26, 1935.—The stipulation filed in this case sets forth the facts with particularity, and for our present purpose it is sufficient to mention the high lights, which are as follows:

Peter C. Hess was the treasurer of Lower Merion Township and, by virtue of his office, the tax collector of the township and school district.

When the Merion Title and Trust Company closed,

Hess had on deposit funds of the township and school district to the amount of $393,353.77.

The Royal Indemnity Company was surety on the bond of Hess, which was in the penal sum of $800,000. The Royal Indemnity Company settled for its liability as surety, by paying the sum of $319,412.18. Hess then assigned his deposits of public money, in Merion, to the Royal Indemnity Company.

By a contract of reinsurance, the Union Indemnity Company reinsured Royal, and assumed one sixteenth, or $50,000 of the risk of Royal on the Hess bond. The New York Indemnity Company, a subsidiary of the Union Indemnity Company, by a similar contract, reinsured Royal for a like amount. The Union Indemnity Company, and the New York Indemnity Company, have paid to Royal, the sum of $20,303 each, representing the full share of each in the loss suffered by Royal.

The Union Indemnity Company, and the New York Indemnity Company, are in the hands of receivers, who have filed a claim with the receiver of Merion, for a one eighth interest in the dividend declared by the receiver of Merion, and now payable on the public deposits of Hess, which have been assigned to the Royal Indemnity Company.

The reinsurance contracts between Royal and the two Indemnity Companies, contain the following pertinent provision:

"The reinsurer shall be entitled to share with the Royal in the proportion which the amount of the reinsurance bears to the amount of said bond, in any and all collateral or indemnity held by the Royal in connection with said bond, and in any and all rights, recourses and benefits accruing to the Royal in connection with said bond, except the reinsurance agreements taken or which may hereafter be taken by the Royal for its sole use and benefit."

The legal question raised by the above facts, may be thus stated: May a reinsurer, after loss, having paid its

full proportionate share to the insurer which paid the full loss, and obtained an assignment from the paid creditor, recover, directly from the debtor, a proportion of a dividend to be paid on the full amount of the debt insured?

"Reinsurance is a contract of indemnity and binds the reinsurer to pay the reinsured the whole loss sustained in respect of the subject insured to the extent for which he is reinsured. The object of reinsurance is said to be indemnity to the insurer against his own act, since he may have the sum he has insured reassured to him by some other insurer": 1 Joyce on Insurance, 146, sec. 28.

"Reinsurers, on payment of a loss, acquire the same rights by subrogation as are acquired in similar cases where the original insurer pays a loss": 33 C. J. 60, sec. 740.

In the present case, the exceptant has, in addition to the right of subrogation, given by the general law, as above cited, an express right to be subrogated to the rights of Royal by virtue of the contract of reinsurance, which provides that the reinsurer "shall be entitled to share with 'the insurer' in any and all collateral or indemnity held by Royal in connection with said bond, and in any and all rights, recourses and benefits accruing to the Royal in connection with said bond."

That the exceptant is entitled to subrogation, is not seriously contested by Royal, but it is contended that this right cannot be asserted directly against the debtor, here, the receiver of Merion, but must be asserted through the insurer. In other words, Royal admits that it owes exceptant one eighth of the dividend declared by the receiver of Merion, but denies the right of the exceptant to receive this amount directly from the receiver of Merion.

"This equity of subrogation is one eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is one, therefore, which is much encouraged and protected.

. . . Payment of the debt, in short, is considered to operate as an assignment of it": Bispham's Principles of Equity (10th ed.), 543, sec. 336.

The effect of subrogation in Pennsylvania is discussed in the old case of Fleming v. Beaver, 2 Rawle 128, as follows:

"As to the supposed inefficacy of the substitution attempted by the parties, and the alleged inability of this court to compel the creditor to assign the judgment, it is sufficient to remark, that an actual assignment is unnecessary. The right of substitution is everything, and actual substitution nothing. By a fiction, to which we are indebted for nearly all our equitable jurisdiction, the law has made the assignment already; and hence, the right of the party entitled, by no means depends on the willingness of the creditor to transfer the security. Here there is a clear right of substitution; and the surety having paid the debt, succeeds by operation of law to the rights of the creditor."

That the right of subrogation operates as an equitable assignment, and that an actual assignment is not necessary, seems to be well settled in Pennsylvania: Wright v. Grover & Baker S. M. Co., to use, 82 Pa. 80; Duffield, for use, v. Cooper, 87 Pa. 443; Deitzler v. Mishler et al., 37 Pa. 82; Kelchner v. Forney, 29 Pa. 47.

Applying the above principles to the facts of this case, it follows that when the exceptant and its subsidiary paid their proportionate share of the loss to the Royal, they were subrogated by operation of law, and by express contract, to the rights of Royal, which in turn were the rights of Hess, as against the principal debtor, the Merion Title and Trust Company.

More specifically the payment worked an equitable assignment pro tanto of the rights of Royal, and Hess and the exceptant and its subsidiary, as assignees, are entitled to receive direct payment from the receiver of Merion.

Had Royal, by express and written assignment, assigned one eighth of its claim to the exceptant, there could be little doubt that exceptant would be entitled to receive the amount so assigned from the receiver of Merion. The doctrine of our cases is that the equitable assignment is just as effective as the express transfer.

We have been unable to find any case in which our appellate courts have passed upon the question now before us. Judge Smith, of Philadelphia County, in Franklin Trust Co., Exception of Pusey & Sterrett, Receivers, C. P. No. 5, Sept. term, 1931, no. 3941, reached the same conclusion herein reached.

Our views also find support, in the decisions of other jurisdictions. See Elwood et al. v. Deifendorf et al., 5 Barb. (N. Y.) 398; The Ocean Wave, 5 Biss. 378; Universal Ins. Co. v. Old Time Molasses Co. et al., 46 F. (2d) 925 (1931).

The industry of counsel, and our own research, have failed to discover one case wherein a contrary view is taken.

We have carefully read the brief of counsel for Royal, but we cannot agree with him, because he treats the exceptant as a creditor of Royal, whereas we look upon exceptant as an assignee of a part of Royal's claim against The Merion Title and Trust Company. The assignment by Hess to Royal did not give the Royal any greater rights than it had before: South Philadelphia State Bank's Insolvency, 295 Pa. 433.

And now, April 26, 1935, the exception of the Union Indemnity Company is sustained, and the receiver of The Merion Title and Trust Company of Ardmore is directed to pay to the receivers of the Union Indemnity Company, one eighth of the dividend declared on the deposits of Peter C. Hess, treasurer, which said deposits amount in full to $393,353.77.