[Philadelphia, January 14th, 1839.]

## PRATT and Others *against* LEWIS.

### CASE STATED.

Husband and wife being seized, in right of the wife, of a tract of land, conveyed the same by deed, duly and separately acknowledged, to A., one of the children, in fee. On the same day, A. executed a bond to the grantors, with condition to pay them a certain sum annually during their lives, and the life of the survivor of them, and at the decease of the survivor, to pay a certain principal sum to B., C. and D., other descendants of the husband and wife. The wife survived her husband; and after his death, cancelled the bond, and executed an instrument reciting that the bond was given to her while she was a married woman, and incapable in law of making a contract, and declaring her dissent thereto. A. then, at her request, gave another bond in the same penalty, with condition to pay her the same annuity, and after her death to pay the principal to E. another of her children. In an action brought by C. and D. against A. after her death, to recover their share of the principal of the first bond, it was *held*, that the act of the mother in cancelling the first bond, did not operate to divest the right of the plaintiffs in the principal sum.

An action of debt was brought in this Court, by Henry Pratt and Susanna his wife, late Susanna Garrett, and Unity Garrett, against Hannah Lewis, and by agreement of counsel, a case was stated for the opinion of the Court in the following words.

" Azariah Lewis and Hannah Lewis, of Newtown township, Delaware county, being seized and possessed of a messuage and tract of about one hundred acres of land, situate in the township of Easttown, Chester county, in right of the said Hannah, conveyed the same by their indenture, bearing date the 2d day of May, A. D. 1829, to their daughter Hannah Lewis, Jr. the defendant, in fee simple; of which messuage and tract of land, the said Hannah Lewis, Jr. took possession under and by virtue of the said indenture.

On the same day Hannah Lewis, Jr. became bound in an obligation to Azariah Lewis and Hannah his wife, their certain attorney, executors, administrators and assigns, in the penalty of $6,000, with a condition, of which the following is a copy.

' The condition of this obligation is such, that if the above bounden Hannah Lewis, Jr. her heirs, executors, administrators or any of them, shall well and truly pay or cause to be paid unto the above-named Azariah Lewis and Hannah his wife, and to the survivor of them, one hundred and fifty dollars annually during their lives, and

(Pratt *v.* Lewis.)

the life of the survivor of them, (being five per cent. per annum on three thousand dollars,) and at the decease of the said survivor pay in shares equal unto the children of Unity Garrett, deceased, daughter of the said Azariah Lewis and Hannah his wife, one thousand dollars, and also pay unto the children of Sarah Williamson who was likewise a daughter of the said Azariah and Hannah, in shares equal one thousand dollars, and also pay unto Margaret Maule, daughter of the said Azariah and Hannah his wife, yearly and every year, fifty dollars, during the life of the said Margaret, and at her death do pay unto the children (in shares equal) of the said Margaret one thousand dollars, then the above obligation to be void, otherwise to remain in full force and virtue.'

The said Azariah Lewis and Hannah his wife had living at the time of this transaction, three children, to wit: Robert Lewis, Hannah Lewis, and Margaret Maule, intermarried with Jacob Maule and living separate from her husband, and the children of two deceased daughters mentioned in the said condition, viz.: Unity Garrett and Sarah Williamson. The plaintiffs in this action are the children of the said Unity Garrett.

The said tract was valued by the said Azariah Lewis and wife at $4,000, which was intended to be apportioned, as stated in the said condition, amongst their daughters, and the issue of the said deceased daughters, per stirpes, in equal parts. Neither Margaret Maule, nor the children of Unity Garrett, nor Sarah Williamson, were privy to the arrangement.

Azariah Lewis and his wife, were at that time far advanced in life. The former died late in June A. D. 1831, aged about eighty-seven years, having received payment of two years interest on said bond, receipts for which are endorsed thereon. A caveat having been filed in the Register's Office of Delaware County, against the probate of a writing, purporting to be a will of the said Azariah Lewis, executed December 2, 1828, and a controversy having arisen as to the validity of that writing to pass the estate of the said Azariah, the feelings of Hannah Lewis, Senior, became warmly enlisted in favour of the validity of that writing, and she determined to cancel the bond, and to prevent as far as was in her power, the members of the family contesting the will, from receiving any part of the aforesaid three thousand dollars. She accordingly on the 22nd day of July, 1831, having signed and sealed on the back of the bond, a declaration of her disagreement to the bond and condition, gave up the bond to be cancelled, and it was cancelled by drawing lines across it in the manner exhibited in the copy annexed.

The said declaration is in the following words:—' Whereas the within bond having been given to me, while I was a married woman, and incapable in law of agreeing or disagreeing to the condition there-of—now that that incapacity is removed, I declare that I do not, and

will not accept of the within bond and that I entirely disagree to being a party thereto, or to take or receive any benefit or advantage under and by virtue of it as obligee, or to accept or receive it in any other character or capacity whatever. In testimony whereof I have hereunto set my hand and seal, this twenty-second day of July, A. D. 1831.'

She, the said Hannah Lewis, Sen. requested her daughter Hannah Lewis, to give bond to her son Robert Lewis, in the same penalty as the above, conditioned for the payment of $150 annually to the said Hannah Lewis, Sen. during her life, and at her decease, the sum of $3,000 to her son Robert Lewis; which was accordingly done.

Hannah Lewis, Sen. died about the 12th day of March, A. D. 1832.

The question for the opinion of the Court is, whether the plaintiffs on the foregoing state of facts are entitled to recover. If the Court shall be of opinion that the plaintiffs can, in any form of action, recover upon the foregoing state of facts, then judgment to be entered in their favour for the sum of one thousand dollars, with interest from the 12th day of March A. D. 1832, without any regard to the present form of action. If they shall be of opinion in the negative, then judgment to be entered for the defendant."

Mr. *Edwards*, for the plaintiffs.—The deed from Azariah Lewis and Hannah his wife, to the defendant, was separately acknowledged in due form by Hannah Lewis. Consequently all her estate passed by it; and she had no power to rescind the contract either during her husband's life or afterwards. Here were vested rights in the grantees which could not be disturbed. A voluntary bond or deed is good between the parties. If a married woman enter into a contract affecting her separate estate, equity will enforce it. *Souverbye v. Arden*, (1 *Johns. Chan. Rep.* 240.) *Bunn v. Winthrop*, (*Id.* 329.) *Moses v. Margatroyd*, (*Id.* 129.) *Davoue v. Fanning*, (3 *Johns. Chan. Rep.* 261.) *Shepherd v. M'Evers*, (4 *Johns. Chan. Rep.* 136.) *Weston v. Barker*, (12 *Johns. Rep.* 276.)

Mr. *Lewis*, for the defendant.—The property belonged to Hannah Lewis, in her own right. The arrangement was made without the privity of the plaintiffs. It was of a testamentary character. The Court will look for the intention of the parties, and carry it out. The gift was inchoate. The bond remained in the possession of Hannah Lewis the elder, until her death. There was no delivery at any time to the plaintiffs. [KENNEDY, J.—Was not the obligee a trustee for them? The case of *Wilt v. Franklin*, (1 *Binn.* 502,) shows that a formal acceptance by a trustee is not necessary.] It is held that a gift is not complete until delivery. *Andrews v. Smith*, (12 *Ves.* 39.) *Willan v. Willan*, (16 *Ves.* 82.) *Hopkins v. Blewitt*,

(Pratt *v.* Lewis.)

(2 *Esp.* 661.) Hannah Lewis had full legal power to release this bond. 18 *Vin. Abr.* 304, pl. 18. 20. If any suit can be sustained, it ought to be in the name of the executors of Azariah Lewis, for the use of the legatees generally. Separate suits cannot be maintained.

Mr. *Kittera*, replied.

The opinion of the Court was delivered by

GIBSON, C. J.—The right of the plaintiffs depends not on considerations which might affect a gift to them from their mother, but on their father's final disposition. It may well be doubted whether he did not succeed to the immediate ownership of the price at the execution of the conveyance; for if there were no preliminary agreement with the mother, the property would change its owner the moment it changed its specific character, insomuch that he might have prevented her from retaining either a legal or an equitable interest in it. As her chose in action, he could have received it to his own use in her lifetime; and surviving her, would have been entitled to it as her administrator. In *Lodge* v. *Hamilton*, (2 *Serg. & Rawle*, 491,) a recognizance to husband and wife for the wife's share of her father's land, which was consequently their joint chose, was held to survive to her only because she was named recognisee. It may be that a bond in the name of him from whom the consideration emanated, but declaratorially in trust, shall not be taken for a gift, before the money has been paid over; but that is not the case of a bond to a bare trustee who did not own the money it was given to secure, *et cujus fuit nec dare nec disponere.* A bare trustee would not be suffered to defeat the trust by an act of collusion; and for all beyond her annuity, what else was the mother? As the surviving obligee, she was the owner of the money at law, but certainly not in equity. Even were the positive assent of a trustee necessary to the validity of the instrument, the mother's assent could not be material in this instance; for were her name stricken out of the bond, a legal title to it would be found in her husband's executor. Besides, equity would not suffer the trust to fail for the mere want of a trustee.

But treating the money as an accessory of the land by reason of some supposed condition of the wife's concurrence in the conveyance, as perhaps we ought to do, the consequence is the same. As her separate property, if such it were when converted, she might deal with it as a *feme sole,* and entitle herself to the same judicial consideration in respect of it. But there, again, the conventional rights of the husband would intervene. The bond and deed, constituting as they do one conveyance, are parts of a settlement whose office it was to make present distribution among the children,

(Pratt *v.* Lewis.)

reserving an annuity to the parents; towards which the father contributed an inceptive freehold, and for the benefit of whom? Certainly for that of the children. The actual value of his interest cannot be computed; but it may have been greater than the sum reserved out of the proceeds, which is enough to make him a purchaser. The mother also was a purchaser, for she threw in the fee; and it will not be said that the husband, surviving her, could have disappointed her bounty by destroying the security, and I see not why her power over it should have been greater. To deprive the children of what their father had given them, would be a fraud, not only on them, but on him. Whether the father and mother could have conjointly destroyed the settlement, is not the question; but had the interests secured by it been estates in land, they would have vested by the deed, and it would have been beyond their power to divest them. It is clear, however, that without his concurrence, even these chattel interests, granting that they sprung mainly from the contribution of the mother, could not be defeated by her. The vigilance of Courts, both of law and equity, in protecting a common concession or gratuity is finely illustrated by decisions on underhand agreements. In *Turton* v. *Benson,* (*P. Wms.* 496,) a bond clandestinely taken by a wife's father to refund a part of her portion, was declared to be a fraud on the obligor's mother, who had negotiated the marriage, and settled money on him; for which, not only she, but the obligor himself, was entitled to be relieved. Exactly on the same principle stands every decision on an underhand agreement in derogation of a compromise with creditors, which is usually founded as much in benevolence as in interest, and of which it is an implied condition that none take measures to gain a particular advantage, it being presumable that all consented to release only on terms of equality. Such is the principle of *Leicester* v. *Rose,* (4 *East,* 372;) and it was applied in *Middleton* v. *Onslow,* (1 *P. Wms.* 678,) to a case which bears a strong analogy to the present. A wife entitled to trust money, procured an order to apply part of it to her husband's debts on terms of composition. Some of the creditors who had held off till the last moment, executed the deed on receiving, from the husband, securities for future payment; and these were ordered to be delivered up, because her sacrifice in consideration of his liberty, would else have been in vain. In all the reported cases of this stamp, there was an underhand agreement at the execution of the deed; but if a concomitant agreement be set aside to prevent imposition on a benefactor, why should not a collusive release by a trustee, or a fraudulent act of cancellation also be set aside? In fact the former is so much the weaker case, that it is perhaps the only one in which a party to a fraudulent agreement may be relieved against it: here the plaintiffs did not even participate in the act of the trustee. As already intimated, I do not say that the expression of a gift in the body of a bond may not be recalled before payment

(Pratt *v.* Lewis.)

over; but where the consideration has not moved exclusively from the obligee, it would be a fraud on a joint contributor to arrest it. Here the surviving obligee was a trustee; and she shall not, by a collusive cancellation, disappoint the purpose of her husband, either as the proprietor of the fund, or as a contributor to it. The cancellation was the act of a spoiler which shall not discharge the instrument. For the form of recovery, the plaintiffs might use the name of the surviving obligee's personal representative, who would be restrained from doing any act to impede them; and they are consequently entitled on the facts submitted.

Judgment is to be entered for the plaintiffs, pursuant to the agreement in the case stated.

Judgment for the plaintiffs.