[ PHILADELPHIA, FEBRUARY 29TH, 1840. ]

## ALLEN *against* THE UNION BANK OF LOUISIANA.

### IN ERROR.

1. A bill of exchange was drawn by A., C. & Co. at New Orleans, upon S. & M. A. & Co. at New York, and accepted by the latter, but protested for non-payment. The firm of A., C. & Co., consisted of S. A., M. A. and W. C. The firm of S. & M. A. & Co., consisted of S. A., M. A. and C. C. An action was brought by the holder of the bill against S. & M. A. & Co. in Philadelphia, as acceptors, and judgment obtained. Afterwards an action was brought in the same Court by the same plaintiff against A., C. & Co. as drawers; in which suits, only S. A. was served with the summons. *Held,* that the judgment in the suit against S. & M. A. & Co., was not a bar to the suit against A., C. & Co.; but that the plaintiffs were entitled to recover the damages against the latter; and therefore that the plaintiff was not bound to surrender the bill to S. A., *on tender of the amount of the judgment against* S. & M. A. & Co. with the interest and costs.

2. A bill of exchange was drawn by the firm of A. C. & Co. in New Orleans, on the 2d of March, 1837, upon a firm in New York, at 60 days after sight, accepted on the 20th of March, 1837, and protested for non-payment on the 22d of May, 1837. At the date of the bill and of the protest, an act of Louisiana was in force which provided, that if any person within the territory should draw or endorse any bill upon any person within the limits of the United States, and the same should be returned unpaid with a legal protest, the drawer, &c. should pay 10 per cent. damages. This act was repealed in March, 1838. In an action brought in 1839, by the holder of the bill against A. C. & Co., (one of the firm residing in Philadelphia,) it was *held,* that the defendant was liable for the 10 per cent. damages.

THIS was a writ of error to the District Court for the City and County of Philadelphia to remove the record of an action on the case brought by The Union Bank of Louisiana against Solomon Allen, Moses Allen and William Clark, junior, trading as Allen, Clark & Co.

The action was commenced by summons which was served on Solomon Allen; and the sheriff returned *nihil habet* as to each of the other defendants.

(Allen *v.* The Union Bank of Louisiana.)

The plaintiffs filed a copy of the instrument upon which the action was brought, and which was as follows:

"Exchange for $13,000. New Orleans, 2d March, 1837.

Sixty days after sight of this first of exchange, (second and third unpaid) pay to the order of Messrs. Wilcox, Anderson & Co., thirteen thousand dollars, value received, which place to account as advised by

ALLENS, CLARK & Co.

Messrs. S. & M. Allen & Co., New York."

Endorsed—" WILLIAM ANDERSON & Co."

" Pay to Walter Mead, Esq., Cash'r, or order.

MARTIN GORDON, JR. Cashier."

The plaintiffs declared against the defendants as drawers of this bill, avering that it was accepted by S. & M. Allen, on the 20th of March, 1837, and protested on the 22nd of May following. The declaration contained also the common money counts.

An affidavit of defence was filed as follows.

" Solomon Allen, one of the above-named defendants, being duly sworn according to law, saith that he has a just defence to the whole of the plaintiffs' claims in the above suit, of the nature and character following.

A suit was instituted in this Court, by the above-named plaintiffs, to March Term, 1838, No. 547, against this deponent, Moses Allen and Charles Clark, trading as S. & M. Allen & Co., as acceptors of the bill of exchange, upon which the above suit was brought, and the process served on this deponent alone; this deponent being a citizen of the state of Pennsylvania, and the other defendants being citizens of another state. That judgment was duly entered against this deponent, on the 2d day of April in the year of our Lord one thousand eight hundred and thirty-eight, and execution stayed by deponent's plea of freehold. And this deponent further says, that on the twenty-first day of February, in the year of our Lord one thousand eight hundred and thirty-nine, he called on Mr. M'Call, the attorney of the plaintiffs in said suit, and legally tendered to him the sum of fourteen thousand five hundred and thirty-four dollars and eighty-eight cents, the amount of the judgment, interest and costs in said suit, and demanded the bill of exchange upon which said suit was brought; and that Mr. M'Call refused to receive said money, or to deliver the bill upon which said suit was brought, on the ground that the tender was not made without prejudice to the claim in the above suit: that the process in the above suit was served on this deponent alone, the other defendants not being citizens of Pennsylvania. Under these circumstances, the deponent rests his defence on the following grounds:

(Allen *v.* The Union Bank of Louisiana.)

First. The plaintiff having elected to sue the deponent as accep-tor of the said bill of exchange, and to take judgment against him in that character, when it was optional with him to sue him as acceptor or drawer, is not entitled to a second judgment upon the same bill against him ; such course being vexatious and illegal.

Second. The deponent having tendered the amount of the judg-ment, interest and costs of the suit in the bill against him as acceptor, the plaintiff was bound to surrender it, and cannot therefore sustain this action upon the bill, the tender having vested the right of the bill in deponent.

Third. The deponent, and the other defendants above-named, are not liable for damages, because at the time the suit was brought, the law of Louisiana giving damages in certain cases on protested bills, had been repealed, and the law now in force in Louisiana giving damages in certain cases on protested bills of exchange, was not in force when said bill was drawn and protested.*

---

* The law of Louisiana referred to in the above affidavit, was passed in 1805, and the material provisions were as follows.

"Sect. 1. That when any person or persons within this territory, shall draw or endorse any bill or bills of exchange upon any person or persons residing out of the limits of the United States of America, and the same be returned back unpaid with a legal pro-test, the drawer thereof and all others concerned shall pay and discharge the contents of said bill or bills, together with twenty per cent. advance for the damages thereof; and so in proportion for any greater or less sum in the same specie as the said bill or bills were drawn, or current money of this territory, equivalent to that which was first paid by the drawer or endorser.

Sect. 2. If any person within this territory shall draw or endorse any bill or bills of exchange upon any person or persons residing out of this territory, but within the limits of the United States of America, and the same be returned back unpaid with a legal protest, the drawer thereof and all others concerned in making or endorsing such bill or bills, shall pay or discharge the contents of the said bill or bills, together with ten per cent. for the damages thereof; and so in proportion for all greater or less sums."

This act continued in force until March, 1838, when an act was passed containing the following provisions.

"Sect. 1. That the rate of damages to be allowed and paid upon the usual protest for non-acceptance or for non-payment of bills of exchange drawn or negociated within this state, shall in the following cases be as follows : on all bills of exchange drawn on and pay-able in foreign countries, ten dollars upon the hundred upon the principal sum specified in such bills; on all bills of exchange drawn on and payable in any other state in the United States, five dollars upon the hundred, upon the principal specified in such bill.

Sect. 2. That such damages shall be in lieu of interest, charges of protest, and all other charges incurred previous to and at the time of giving notice of non-acceptance or non-payment; but the holder of such bill shall be entitled to demand and recover lawful interest upon the aggregate amount of the principal sum specified in such bill, and of the damages thereon from the time at which notice of protest for non-acceptance or non-payment shall have been given, and payment of such principal sum shall have been demanded.

Sect. 3. That if the contents of such bill be expressed in the money of account of the United States, the amount of the principal and of the damages herein allowed for the non-acceptance or non-payment shall be ascertained and determined without any refer-ence to the rate of exchange existing between this state and the place on which such bill shall have been drawn at the time of the demand of payment or notice of non-acceptance or non-payment.

Sect. 4. That if the contents of such bill be expressed in the money of account or cur-rency of any foreign country, then the principal as well as the damages payable thereon

Fourth. The law of Louisiana applicable to the recovery of damages on bills of exchange, is a penal law, or prejudicial to citizens of Pennsylvania, and cannot be enforced against a party not a citizen of Louisiana, in the Courts of Pennsylvania."

A rule was obtained to show cause why judgment should not be entered for want of a sufficient affidavit of defence; which after argument, was made absolute.

This writ of error was then taken and the following exceptions filed.

" I. The Court below erred in directing judgment to be entered for the plaintiffs below, because,

1st. The plaintiffs below, having sued the defendant below as acceptor of said bill of exchange, and obtained judgment against him, cannot sustain a second suit against him as drawer on the same bill; the matter having been already adjudged in the suit against him as acceptor.

2d. The defendant below having tendered the amount of the judgment, interest and costs, in the suit against him as acceptor, to the plaintiffs below, was entitled to the bill; and it was the duty of the plaintiffs below to surrender it to him.

II. The defendant below was not liable to the payment of damages. The law of Louisiana giving damages in certain cases on protested bills, existing when the said bill was drawn, had been repealed before this suit was brought; and the law of Louisiana now in force, was not in existence when this bill was drawn and protested.

III. The law of Louisiana giving damages against the drawer and endorser of bills of exchange in certain cases, was applicable to persons residing within said state. It is prejudicial to the citizens of other states, and ought not to be inforced by the courts of other states."

Mr. *Chester*, for the plaintiff in error.—One only of the defendants, viz. Solomon Allen, resides here. Of his partners, one resides in New York, the other in New Orleans. Judgment having been already given against the only defendant here in another suit on the same bill, he is no longer liable to an action : *transivit in rem judicatam.* No damages can be recovered here. If any can be recovered, it must be by suit in New Orleans. The reason which was given in *Hazlehurst* v. *Kean*, (4 *Yeates*, 19,) for not returning the

shall be ascertained and determined by the rate of exchange; but whenever the value of such foreign coin is fixed by the laws of the United States, then the value thus fixed shall prevail."

ʃ (Allen *v.* The Union Bank of Louisiana.)

bill does not exist here. This Court will not carry into effect the laws of other states if they are prejudicial to our own citizens. The defendant had no domicil in Louisiana. At all events, the law of Louisiana giving the damages asked here, was repealed before the suit was brought.·

Mr. *M'Call*, contra.—It has been assumed that the defendants were the same in both· suits; but in point of fact the suits were against distinct firms. That a defendant may be liable both as drawer and acceptor, where he is a member of two firms, appears by *Wise* v. *Prowse*, (9 *Price*, 393 ; 4 *Eng. Exch. Rep.* 132.) *Chitty on Bills*, 570. These actions could not have been consolidated. The right to damages was sufficient to prevent this. The tender made by the defendant should have been unconditional. *Chitty's Gen.· Prac.* 508. The *lex loci* governs the· drawer and all the parties to the bill. The act of 1805, continued in force until after the bill was protested. The case of *Hazlehurst* v. *Kean*, is in point, and not to be distinguished from this.

The opinion of the Court was delivered by ·

SERGEANT, J.—None of the errors assigned are sufficient to reverse· the judgment rendered for the plaintiff in the Court below.

First error. Not only was the former suit on which judgment was rendered against Solomon Allen, the defendant, brought against him as one of the acceptors of the bill, whereas the present suit is against him as one of the drawers, but the former suit was against a different firm from that which is sued in the present instance. The drawers of the bill who are now sued, are Solomon Allen, Moses Allen and *William Clark, junior* ; the acceptors against whom the former judgment was rendered, are Solomon Allen, Moses Allen and ' *Charles Clark.* The parties therefore are different, the suits could not be consolidated, nor can the judgment against the one be considered as concluding an action against the other. It is common to sue the respective parties to a bill in different actions, though there can be but one satisfaction; and the plaintiff could not in the former suit recover satisfaction of the damages for the return of the bill unpaid and protested, but merely the principal and interest and costs. The· doctrine is stated by Mr. Chitty in the last edition of his Treatise on Bills of Exchange, p. 570. . "Whenever the holder of a bill, &c. has a remedy against several parties to it, he may commence and proceed in several actions against each of the parties at the same time; and an action commenced against one will not preclude any remedy against the others; but as the different persons liable on the bill are debtors to the holder in respect of the same debt, satisfaction by any one will discharge the others from liability as to the principal sum due on the bill; and if the holder

reject an offer by a drawer or endorser of a bill to pay debt and costs of the action against him, the Court will make an order to restrain the holder from taking out execution: though if the money be paid pending several actions against the other parties to the bill, the plaintiff may without reserving any part of the principal money, proceed in an action for recovery of costs." And he cites *Wise* v. *Prowse*, (9 *Price*, 393,) which is a case much resembling the present. There a party was sued jointly with others as drawers, and separately as acceptor of a bill, and the Court considered him liable in the two characters, which could not be comprised in the same declaration, and that the plaintiff was entitled to the respective remedies.

Second error. The plaintiff for the same reasons was not bound to surrender the bill on tender of the amount of the judgment in the former suit with interest and costs; because it was not a satisfaction of all he was entitled to claim upon the bill. The condition annexed to the tender, that the plaintiff should surrender the bill, was unwarranted: it was his till the damages were paid in addition. The defendant could only claim a discharge from the judgment in the former suit.

Third error. We think the plaintiff was clearly entitled to the damages given by the law of the state of Louisiana of 1805, which was in force when the bill was drawn, the 2d of March, 1837, and when it was accepted, the 20th of March, 1837, at New York, and when it was protested, the 22d of May, 1837. The law of 1805, continued in force till the 7th of March, 1838, when it was superseded by the new law then passed. The latter law no doubt controls subsequent cases, but it does not repeal the former law either expressly or impliedly. That still constitutes the rule as to all cases falling within its provisions which occurred prior to the 7th of March, 1838; and this is one of that description.

Fourth error. This is not such a penal law as the Courts of another state will refuse to execute. It is principally a remedial law, for the redress of the party injured. It aims chiefly at compensating the holder for the inconvenience and loss he is put to in consequence of the rashness or bad faith of one who sells a bill of exchange on a person abroad, without having funds in his hands to honour it. This is a just and equitable provision, necessary in commercial communities to guard the interests of innocent individuals, and to secure good faith in commercial transactions. It is such a foreign law as the Courts of this state will execute. In the case of *Hazlehurst* v. *Kean's Administrators*, (4 *Yeates*, 19,) this principle is recognised. The Court say, the *lex loci* must govern in cases of this nature. The parties must be supposed to have in contemplation the law of the place where the contract is made, and it necessarily forms part of the contract. On bonds executed in Ireland, where

(Allen *v.* The Union Bank of Louisiana.)

the legal interest is six per cent., the English Courts uniformly allow Irish interest. The same rule holds as to bonds in India, and bills of exchange drawn in different parts of Europe.

Judgment affirmed.