## Townsend v. Frost et al.

*Wills — Trusts and trustees — Active and passive trusts—Life-tenant— Remainderman—Distribution of principal.*

1. In Pennsylvania a trust to divide and distribute is not an active trust, inasmuch as it serves no purpose that could not be equally served without it.

2. Where a testator gives his estate to a trustee to pay the income therefrom in certain ways designated, and upon the death of his last surviving child "to make partition, allotment and division" of the principal, consisting of real and personal property, to persons designated, the trust ceases to be an active trust upon the death of the last surviving child of the testator.

3. In such case, the nature of the trust is not in any way affected by the use of the words "partition" and "allotment;" nor is the word "division" modified or its meaning limited by the use of the word "allotment," nor is the trust affected by a gift to the trustee of "all necessary powers, and authorities, interests and estates in the premises."

4. If any portion of the residuary real estate under such a will cannot be divided equally among the parties, the trustee has no power to sell and divide the proceeds; hence, any of the former *cestuis que trust* may maintain a bill in equity to partition the real estate.

5. The right to partition is an incident of ownership in common, and parties should not be deprived of their right in the absence of some compelling reason.

*Res judicata—Parties—Assignees of parties.*

6. Where two of several defendants in an equity suit are neither served with process nor appear by counsel, and no decree is entered against them, neither they nor their subsequent assignees are bound by any decree entered in such suit.

7. A judgment to be a bar to another suit for the same cause of action must be not only a final judgment, but entered in a proceeding where the rights of parties have been adjudicated.

8. Where such a suit has been dismissed as to some of the defendants and subsequently the suit has been withdrawn, the defendants against whom no decree was entered cannot subsequently in a later case avail themselves of the decree of dismissal entered in the former suit against some of the defendants only.

*Partition—Land subject to outstanding lease.*

9. The fact that land owned by tenants in common is subject to an outstanding lease is no ground for defeating partition.

Bill in equity. C. P. No. 1, Phila. Co., Dec. T., 1926, No. 2685.

*Franklin S. Edmonds* and *Frederick C. Newbourg, Jr.*, for plaintiff.

*John Wintersteen* and *Thos. Raeburn White*, for defendants.

TAULANE and McDEVITT, JJ., Oct. 11, 1927.—The bill is for the partition of certain real estate which vested in the issue of the children of the late Henry G. Freeman under the terms of his will.

The answers deny the right to partition on two grounds, viz., (*a*) that the title to the real estate in question is still vested in the trustee of the will of the said Henry G. Freeman under an active trust, and (*b*) that the plaintiff, the nominee of The Real Estate Trust Company, is bound by a decree of the Court of Common Pleas No. 4, wherein The Real Estate Trust Company was a party, which dismissed a former bill for the partition of the real estate of the said Henry G. Freeman on the ground that it was still held by his trustees under an active trust.

The late President Judge Bartlett heard the testimony and died before he had an opportunity to prepare an adjudication. All parties in interest have agreed that the matter may be disposed of by McDevitt and Taulane, JJ., with the same effect as if the testimony had been taken before them.

Requests for findings of fact and conclusions of law have been presented by counsel, and the questions of law involved have been argued at length by counsel before McDevitt and Taulane, JJ.

Townsend *v.* Frost et al.

Frederick C. Newbourg, Jr., Esq., and Franklin Spencer Edmonds, Esq., appeared for the plaintiff, and Hon. Hampton L. Carson for Fidelity-Philadelphia Trust Company, trustee under the will of Henry G. Freeman, Jr., deceased; Thomas Raeburn White, Esq., for Isobel F. Frost and Charles W. Frost; John Wintersteen, Esq., for Girard Trust Company, trustee under the will of Helen F. Brewster, deceased; Joseph H. Grubb, Jr., Esq., for The Real Estate Trust Company of Philadelphia; and Albert S. Longbottom, Esq., for Minnie Freeman Lee, defendants.

From the pleadings and proofs, the court make the following findings of fact and conclusions of law:

## Findings of fact.

1. Henry G. Freeman died on Feb. 15, 1875, having first made and published his last will and testament, dated Feb. 11, 1874, and two codicils thereto, dated, respectively, July 14, 1874, and Jan. 26, 1875, which said will and codicils since his death were duly probated before the Register of Wills of Philadelphia County and registered in Will Book No. 83, page 403.

2. True copies of said will and codicils are attached to the bill.

3. Henry G. Freeman died seized, *inter alia*, of premises Nos. 1346 and 1348 Chestnut Street and No. 109 South Broad Street, in the City of Philadelphia, more particularly described as follows: . . .

4. Subsequent to the death of the said Henry G. Freeman, his estate acquired title to a portion of the bed of a certain four feet wide alley between premises Nos. 1346 and 1348 Chestnut Street, and more particularly described as follows: . . .

5. The above-described four pieces of land are the subject-matter of this proceeding and constitute and form the southeast corner of Broad and Chestnut Streets, having a frontage on Chestnut Street of 42 feet and a depth along Broad Street of 124 feet, the rear 20 feet on Broad Street has a depth at right angles to Broad Street of 83 feet.

6. By lease dated Aug. 2, 1897, the Girard Trust Company, trustee under the will of Henry G. Freeman, deceased, by virtue of a decree of the Orphans' Court of Philadelphia County (Freeman's Estate, 181 Pa. 405), demised the above described four pieces of land for the term of fifty years upon improvement lease plan to Henry G. Freeman, Jr., who, on the same day, transferred and assigned said lease to The Real Estate Trust Company of Philadelphia.

7. True copies of the said lease and assignment are attached to the bill.

8. There was erected on the above-described four pieces of land a seventeen-story office building, which was completed in 1898, and from that time until 1903 it was used and operated as a complete and independent building.

9. In 1903, The Real Estate Trust Company of Philadelphia erected an addition to said office building on a lot it owned on the south side of Chestnut Street, with a frontage of 61 feet, immediately adjoining to the east the said four above-described pieces of ground, and on a portion of said four pieces of ground now already built on.

10. In 1911, The Real Estate Trust Company of Philadelphia erected another or second addition to said office building on a lot it owned on the south side of Chestnut Street with a frontage of 22 feet.

11. The said seventeen-story office building with the two additions are used and operated together as one building, and as a unit are assessed for taxation for the year 1927 at $4,000,000.

12. Henry G. Freeman left him surviving a widow, Eliza Freeman, long since deceased, and the six children named in his will, to wit, William H.

Townsend *v.* Frost et al.

Freeman, Elizabeth Freeman Ashburner, Charles D. Freeman, N. Chapman Freeman, James Black Freeman and Caroline Sophia Schultz, all of whom, in the order named, have died. Caroline Sophia Schultz, the last survivor of said children, died on May 30, 1923. Thereafter, Girard Trust Company, as trustee under the will of Henry G. Freeman, filed in the Orphans' Court of the County of Philadelphia its fourth account, which was duly confirmed. Pursuant to the adjudication thereon, all of the assets of the residuary estate of said decedent have been fully and finally distributed to the parties entitled, saving and excepting only the real estate which is the subject-matter of this proceeding, a tract of wild land in Clinton County, Pennsylvania (said to contain 399¼ acres, and which is of little, if any, value), one share of Woodlands Cemetery stock, six lots in Woodlands Cemetery, six lots in West Laurel Hill Cemetery, and one lot in St. Mary's Cemetery. This final distribution of the residuary estate of the decedent was begun June 6, 1924, and was not completed until Oct. 10, 1924. The complainant herein, Edward Y. Townsend, has no interest in said tract of wild land or in said cemetery lots.

13. As a result of the various devolutions of title set forth in the bill and in the amendment to the bill, which was allowed June 10, 1927, which devolutions are not disputed, title to the real estate which is the subject-matter of this proceeding is vested in the following persons and in the following proportions:

Edward Y. Townsend, the complainant................. 62/1800
The Real Estate Trust Company of Philadelphia.........1431/1800
Fidelity-Philadelphia Trust Company, trustee under the
    will of Henry G. Freeman, Jr...................... 135/1800
Girard Trust Company, trustee under the will of Henry
    F. Brewster..................................... 46/1800
Isobel F. Frost....................................... 60/1800
Minnie Thompson Lee.................................. 66/1800

14. No partition or division of the real estate which is the subject-matter of this proceeding has ever been made.

15. The bill for partition instituted by Gavin Brackenridge and Helen Mac-Nab in the Court of Common Pleas No. 4, to March Term, 1924, No. 11393, was filed on May 26, 1924, and prayed for partition not only of the real estate here involved, but also of a yearly ground rent of $4050 issuing out of land situate at the southeast corner of Walnut and Camac Streets and a tract of wild land in Clinton County, Pennsylvania.

16. At the time the bill in Court of Common Pleas No. 4 was filed, the residuary estate of Henry G. Freeman, deceased, consisted of real and personal property and was then undistributed.

17. The first distribution of the residuary estate of Henry G. Freeman, deceased, was made on June 6, 1924, and the last on Oct. 10, 1924, and all his residuary estate has been distributed except the real estate here involved and the land in Clinton County, Pennsylvania.

18. The bill in Court of Common Pleas No. 4 named twenty defendants, including the Girard Trust Company, trustee under the will of Henry G. Freeman. On Aug. 4, 1925, the said bill was dismissed as to five only of these twenty defendants, to wit, Girard Trust Company, trustee under deed of Florence F. Brinton; Girard Trust Company, trustee under deed of May V. Brinton; Beatrice E. Freeman; Girard Trust Company, trustee under will of Henry G. Freeman; and The Real Estate Trust Company of Philadelphia. No order or decree was entered as to the other defendants, except that as to Fidelity Trust Company, trustee under the will of Henry G. Freeman, Jr.,

deceased, an order was entered striking off the exceptions filed by it and giving leave to it to plead, answer or demur.

19. Of the twenty defendants named in the bill in Court of Common Pleas No. 4 and prior to the decree of dismissal of Aug. 4, 1925, only five filed answers or demurrers, and only twelve (including the five just mentioned) appeared by counsel (and there is nothing. which shows that any more of the defendants had then been served with process). One of these twelve had filed a disclaimer of interest. Of the remaining eight defendants, six, to wit, Emilie S. Blois, Eliza F. Cuffe (Duchesse de Pleneuf), Matilda Dusuzeau, Morris Mendelson, Marcia B. Winton and Girard Trust Company, trustee under the will of Helen F. Brewster, appeared by counsel after the decree of Aug. 4, 1925, and the other two, to wit, Lina Vessillier and Katie H. Smith, never appeared and were never served with process. Of the six who appeared after the decree of Aug. 4, 1925, at least one, Matilda Dusuzeau, from whom the complainant in this proceeding purchased an interest in the property which is the subject-matter of this proceeding, filed neither answer nor demurrer and no order or decree was entered against her.

20. The complainants in said bill appealed to the Supreme Court from the five decrees dismissing the bill, but subsequently abandoned their appeals and the whole proceedings, as is shown by the judgments of non pros. entered as to all five appeals and by the withdrawal on April 21, 1926, of the petition for an order of service on the unserved defendants.

21. All of the deeds and assignments to The Real Estate Trust Company of Philadelphia which were made prior to the filing of the bill in Court of Common Pleas No. 4 and prior to Oct. 10, 1924, covered the interest of the respective grantors or assignors in the entire residuary estate of Henry G. Freeman, deceased. All of the deeds to The Real Estate Trust Company of Philadelphia which were made after Oct. 10, 1924, covered only the interest of the respective grantors in the premises which are the subject-matter of this proceeding.

22. The Real Estate Trust Company of Philadelphia was a party of record in the case in Court of Common Pleas No. 4 and there opposed partition on the ground that the parties to the proceeding did not possess legal title to the property involved. The bill in Court of Common Pleas No. 4 included the real estate here involved as well as other real estate.

23. The plaintiff is the grantee of and now owns the interests of Matilda Dusuzeau and Lina Vessellier under the will of Henry G. Freeman, deceased, in and to the four above-described pieces of land constituting the southeast corner of Broad and Chestnut Streets. He has no other interest in the residuary estate of the said Henry G. Freeman, deceased. Matilda Dusuzeau was named as a party defendant to the bill in the Court of Common Pleas No. 4. She was not served with process and did not file an answer or demur. Counsel entered an appearance for her on Nov. 9, 1925, some months after the decree dismissing the bill as to five defendants only. No order or decree was entered against her, and the entire proceeding for partition was subsequently abandoned.

24. Lina Vessellier, though named as a party defendant, was not served with process and she did not appear by counsel or otherwise.

25. Plaintiff acquired said interest of Lina Vessellier on Dec. 17, 1926, and said interest of Matilda Dusuzeau on Dec. 1, 1926.

26. The plaintiff holds his said interests in the premises described in the bill as nominee or trustee for The Real Estate Trust Company of Philadelphia, one of the defendants.

27. The plaintiff's amendment of his bill in the case in Court of Common Pleas No. 4 was filed on Oct. 27, 1925, subsequent to the decrees dismissing the bill, and was never acted upon by the court.

## Discussion.

This case raises two questions, viz.:

(a) Is the trust under the will of Henry G. Freeman to divide and partition his residuary estate upon the death of all his children an active or passive trust?

(b) Is the decree of Court of Common Pleas No. 4 in a former partition proceeding res judicata in this case?

(A) Is the trust active or passive?

Henry G. Freeman gave his residuary estate to the Girard Trust Company in trust to pay the income to his wife (now deceased) for life, and at her death he provided: "Then in trust to divide the net income and proceeds of said estate as received by said Trustees into six equal parts, and to pay one of the said six parts to each of my four sons, William Henry, James B., Charles and Chapman, and to each of my two daughters, Elizabeth, wife of T. A. Ashburner and Caroline Sophia the wife of Martin Schultz during their several and respective natural lives."

Upon the death of any of his six children, he provided for the distribution of the income of the one so dying as follows: "In trust from and after the death of either of my sons or daughters and until the death of all of them to pay the income which he or she would, if living, have received to such person or persons of kin to such son or daughter as he or she may by will have appointed and in default of such appointment to the child or children of such son or daughter that may then be living, or the issue of any child or children of such son or daughter that may then be dead, leaving issue, in equal shares equally, as however that such issue shall take per stirpes only a parents share and if there be no children or issue of such son or daughter then such person or persons as would take from through or under me had I lived until then and died intestate."

Upon the death of the last survivor of his six children, he directed his residuary estate to be distributed as follows: "In trust when and so soon as the longest liver of them my said sons and daughters shall be dead, to make partition, allotment and division of my entire estate, real and personal to and amongst the persons receiving or entitled to the income thereof immediately prior to such death, by virtue of the previous clauses of this my will, and the persons who under the said clauses would be entitled to the income of the share of the said longest liver, at his or her death according to their several and respective rights, shares, interests and estates in said income, and they my said Trustees shall according to said partitions, allotment and division by good and sufficient deeds, conveyances, assurances, transfers and assignments vest in each of said persons absolutely in fee to him, or her, his or her heirs, executors, administrators and assigns, the title to his or her purpart, share or allotment in severalty and to enable them my said Trustees so to do I hereby give them all necessary powers and authorities, interests and estates in the premises."

Henry G. Freeman's last surviving child died on May 30, 1923, and the persons entitled to share in the residuary estate of the said Henry G. Freeman, as recited in the bill, had vested interests therein at the time of the death of said last surviving child (Freeman's Estate, 282 Pa. 206).

The trustee under the will of Henry G. Freeman has distributed through an account in the Orphans' Court and a decree thereon all the residuary estate

of the said Henry G. Freeman to the parties entitled, except the real estate, which is the subject of this partition, some 300 acres of unimproved land in Clinton County, Pennsylvania, and some cemetery lots.

The plaintiff has no interest in the unimproved land in Clinton County or in the cemetery lots, his interest being limited to an undivided share of the real estate at Broad and Chestnut Streets.

No one questions that the trusts under the will of Henry G. Freeman were active ones until the death of his last surviving child.

Does the direction to the trustee to divide and partition the residuary estate to those entitled in remainder involve the performance of such active duties as will keep the trust alive beyond the period fixed for distribution?

If the trust be still active, the full legal title to the land is still vested in the trustee, and the trustee is still entitled to receive the rents. There is no doubt that the trustee's right to receive the rents of the real estate ceased upon the death of the last surviving child.

In Bacon's Appeal, 57 Pa. 504, where the will directed the trustee to convey the residuary estate to the remaindermen upon the death of the life-tenant, Strong, J., said: "As already noticed, the codicil directs that the titles shall be held by the trustees in trust to receive and pay over the income during the life of each daughter and of her husband, if he should survive her, and then the portion of each to be conveyed to the right heirs of the daughter in fee simple. No other duties toward the remaindermen are prescribed than to convey to them. The trustees were not to receive the income and pay it over to them. They were not at liberty to hold a single hour for the use of those in remainder. At most, they were but the conduit through which the title was to pass."

So, in the case at bar, the will gives the trustee no authority to receive or collect a dollar of rent after the death of the last surviving child. To retain legal title in the trustee would be for no purpose of management or conservation of the residuary estate or for the protection of the beneficiaries, but only to make a division which the parties could do better themselves, either amicably or by proceedings in partition.

Whatever the law may be elsewhere, it is well settled in this State that a trust to divide and distribute is not an active trust, for the very simple reason that the trust serves no purpose that could not be equally served without it.

In Bispham's Equity (10th Edition), 100, it is said: "The other departure of the Pennsylvania doctrine from the English rule is that, in some cases where in England the trust would not be executed (*e. g.*, where there is a mere trust to convey), the severance of the legal and equitable titles will not be considered to exist and the legal fee will be treated as having passed to the beneficial owner. 'It is true that we have in some cases decreed conveyances from a trustee to a *cestui que trust* when the purpose of a trust has been fulfilled, but this was not because the legal and equitable titles remained apart. It was to dissipate a useless cloud upon the title and make the property more marketable.' "

In Pepper's Estate, 30 W. N. C. 288, the testator appointed executors and gave his residuary estate to trustees to distribute among his beneficiaries in certain proportions. It was held that the trust was a dry one, and the court ordered the executors to distribute directly to the beneficiaries.

In Carter's Estate, 225 Pa. 355, the will provided: "When my said two grandchildren shall respectively attain the age of twenty-one years, then in trust to pay, assign and convey to each of them the one-half part of the said one equal eighth part of my said residuary estate, so as aforesaid directed to

be held in trust for them respectively, and the accumulation of the income thereof."

When the two grandchildren became of age, they filed a petition for partition of the real estate before the trustee conveyed to each of them a half interest of one-eighth of the residuary estate. In sustaining the right to partition, the court said: "Having attained their majority, the title to the real estate vested in the two grandchildren absolutely, and they now hold a fee simple title to the undivided one-eighth part of the real estate of their grandfather. If no other provision of the will prevented partition, it is clear that either or both of the grandchildren would be entitled to have an inquest awarded. It is claimed, however, that the right to demand partition is taken away by the fact that the will directs the executor to make division of the estate. This position, however, is not tenable and is directly in conflict with the decision of this court in Rawle's Appeal, 119 Pa. 100. There, the testator directed his executors to divide the residuum of his estate into five parts, one of which he gave to each of his five children, providing that on the death of any of his children, the children of the deceased child should receive its parent's share. This court held that 'the alienee of the interest of a minor child of a deceased child of the testator in the land devised to its mother was entitled to have partition in the Orphans' Court, notwithstanding the directions to the executors to divide the estate into parts.' The correctness of this ruling was recognized in the more recent case of Caldwell v. Snyder, 178 Pa. 420."

In Caldwell v. Snyder, 178 Pa. 420, 424, Sterrett, C. J., said: "Thus it was held in Rawle's Appeal, 119 Pa. 100, a direction to executors to 'divide' did not exclude partition by the devisees themselves; and in Sheridan v. Sheridan, 136 Pa. 14, a power given executors to sell, 'if they found it necessary to do so in order to make a fair and equitable division of the estate.'"

In Chamberlain v. Maynes, 180 Pa. 39, 43, Mitchell, J., said: "It is true the deed gives the trustee a power of partition or of sale in case partition could not be made without spoiling the whole, but, as already said, this was only to be exercised when Mary Reilly should be desirous of selling, or when the youngest child of Susan Maynes should reach the age of twenty years and partition or sale and distribution of proceeds was desired. The power in the trustee did not depend on his judgment and was not an essential part of the trust which would keep it alive against the will of the cestui que trust, but was merely ancillary and for convenience of administration. When Mary Reilly or her grantee chose to terminate the trust and treat the title as vested in law, the mere incidental authority of the trustee to make partition when it should be desired by the cestui que trust cannot be allowed to stand in the way."

The trust to divide in the Freeman will is, in the language of Mitchell, J., "merely ancillary and for the convenience of administration."

The trust in the Freeman will amounts to nothing more than a mere direction to divide, and the authorities we have quoted clearly show that a trust to divide is a dry or passive trust.

The nature or character of the Freeman trust is not in any way affected by the use of the words "partition" and "allotment."

Partition is defined in Black's Dictionary, 876, as follows: "The dividing of lands held by joint tenants, copartners or tenants in common into distinct portions, so that they may hold them in severalty. And, in a less technical sense, any division of real or personal property between co-owners or co-proprietors."

Townsend v. Frost et al.

Any division of an estate necessarily implies its partition. Therefore, the meaning of the word "division" was not modified or in any way qualified by using the word "partition." Moreover, as the residuary estate consisted of both real and personal property, it is quite clear that the word "partition" was used in no other sense than division.

Again, the word "division" is not modified or its meaning limited by the use of the word "allotment." Allotment is defined in Black's Dictionary, 61, as follows: "Partition, apportionment, division."

Dividing an estate among several persons necessarily implies the allotment of the shares; in fact, there can be no division of an estate without an allotment. It is clear, therefore, that the word allotment is used in its popular sense of transferring a part of something that has been divided, and this is particularly true when we consider that the residuary estate included both real and personal property.

It is true the last words of the trust are: "I hereby give them (trustee) all necessary powers and authorities, interests and estates in the premises."

If the trustee has power to divide the residuary estate among the parties, it has implied power to execute the necessary documents to make the transfer. Nothing was added to the power of the trustee by the use of the words just quoted. If any portion of the residuary estate cannot be divided equally among the parties, the trustee has no power to sell and divide the proceeds. The trust, nevertheless, would be a dry one if the trustee has a discretionary power to sell to make the division: Sheridan v. Sheridan, 136 Pa. 14.

Though the last surviving child died in 1923, the trustee has never attempted to exercise its authority to divide the residuary estate. Practically the entire residuary estate has been distributed by the decree of the Orphans' Court. The only remaining asset of value is the real estate, the subject-matter of this suit. It is a single property and could not be divided among the parties in interest. The trustee has no authority to sell it and divide the proceeds among the parties. The only thing the trustee could do would be to give deeds to the several parties for their respective undivided shares. If this be all the trustee could do, it is quite clear the trust is a dry one, because such a deed from the trustee would put the parties in no better position than they are now.

The right to partition is an incident of ownership in common, and parties should not be deprived of this right in the absence of some compelling reason: Caldwell v. Snyder, 178 Pa. 420, 422.

We are quite clear that the trust to divide and partition is a dry trust and that the parties have such a title as enables them to file a bill for partition.

We are unable to follow the opinion of Court of Common Pleas No. 4, that the trust in question is an active trust, unless the case before Court of Common Pleas No. 4 could be distinguished from the one before us on the ground that a different statement of fact was presented to Court of Common Pleas No. 4.

(B) Is the decree of Court of Common Pleas No. 4 res judicata?

The plaintiff is the assignee of Matilda Dusuzeau and Lina Vessellier, both of whom were named as parties defendant in the proceedings in the Court of Common Pleas No. 4. Lina Vessellier was neither served with process nor appeared by counsel. An appearance by counsel was entered for Matilda Dusuzeau subsequent to the entry of the decree dismissing the bill as to five of the defendants. No order or decree was entered against either Matilda Dusuzeau or Lina Vessellier, and eventually the partition proceeding in Court of Common Pleas No. 4 was abandoned.

Neither Matilda Dusuzeau nor Lina Vessellier is bound or in any way affected by anything done in the former partition proceeding. The plaintiff stands in their shoes, and if they are not bound by any decree in that case, neither is the plaintiff: Posten v. Posten, 4 Wharton, 26; Allen v. Union Bank, 5 Wharton, 420; Kauffelt v. Leber, 9 Watts & Sergeant, 93; Lightner's Estate, 187 Pa. 237; Colton v. Smith, 11 Pickering (Mass.), 311; Perrine v. Kohr, 205 Pa. 602.

Surely either Matilda Dusuzeau or Lina Vessellier could have instituted the present partition proceeding without being precluded by any decree in the former partition proceeding.

The Real Estate Trust Company was one of the defendants in the case in the Court of Common Pleas No. 4 and it may be bound by the decree entered in that case as to the shares of the real estate in question it then owned and any other shares it subsequently acquired from persons likewise bound, but neither The Real Estate Trust Company nor the plaintiff, its nominee, is bound by that decree as to any shares acquired from persons not precluded by that decree. This being so, it makes no difference whether the plaintiff or The Real Estate Trust Company be the plaintiff in the present case. No rule of law or public policy would be infringed by the plaintiff or The Real Estate Trust Company in acquiring the shares of persons not precluded by the decree of the Court of Common Pleas No. 4, though the shares were acquired for the admitted purpose of instituting the present proceedings and avoiding the decree in the former proceedings.

We have grave doubts whether the decrees entered by the Court of Common Pleas No. 4 are *res judicata* as to any of the parties to this proceeding. A judgment to be a bar to another suit for the same cause of action must be not only a final judgment, but entered in a proceeding where the rights of the parties have been adjudicated.

Some twenty persons were parties defendant in the case in Court of Common Pleas No. 4, but decrees dismissing the bill were entered against five only of the defendants, the court saying: "The foregoing statement explains in brief the reasons for the dismissal of the bill so far as concerns those defendants on whose demurrer or answer argument was heard. As to the other defendants, the case is not in such a position that a decree may be entered for its final disposition."

At the time the decrees of dismissal were entered, some of the defendants had not been served and later the entire proceeding was abandoned by the plaintiff withdrawing the order granting leave to serve defendants residing without the State.

No decree was ever entered for or against any of the defendants now before us except The Real Estate Trust Company. We are quite confident that the present defendants, other than The Real Estate Trust Company, could not avail themselves of the decrees of dismissal entered in favor of The Real Estate Trust Company and four of the other defendants in the proceeding in Court of Common Pleas No. 4.

If the defendants now objecting to partition had themselves instituted the proceeding, it is obvious that The Real Estate Trust Company could not have pleaded *res judicata* against them. If this be so, it is equally clear that the objecting defendants could not plead *res judicata* against The Real Estate Trust Company or the present plaintiff.

The outstanding lease which will not expire until 1947 is no obstacle to partition (Mayer's Estate, 17 Dist. R. 677), and neither is the fact that the original seventeen-story office building now erected on the land, which is the

Townsend *v.* Frost et al.

subject of the present partition, is used in connection with the two additions later built and now owned by The Real Estate Trust Company. The office building as built on the land in question could be separated from the additions and used as an office building.

The manner in which the office building is now used may limit the number of persons who would bid at the sale, but that is no reason why the parties are not entitled to partition. If the parties objecting to partition will be at a disadvantage in realizing the best price for their interests, it is due primarily not to the lease or the arrangement of the building, but to the fact that many of the parties in interest have seen fit at this time to realize on their investment instead of waiting until the expiration of the lease when all the improvements on the devised land would pass, without cost, to the Freeman heirs.

### Conclusions of law.

1. The interests of the parties plaintiff and defendant in the real estate described in the bill are vested.

2. The trust in the will of Henry G. Freeman, deceased, to partition and divide his residuary estate is a dry or passive trust.

3. The title of the plaintiff and defendants to the land described in the bill is such as enables the plaintiff to file his bill for partition.

4. The decrees entered by the Court of Common Pleas No. 4 in the former partition proceeding are not *res judicata* in this proceeding.

5. The plaintiff is entitled to partition of the lands described in the bill.

6. The parties in interest and their respective shares are set forth in the findings of fact.

The parties have filed requests for findings of fact and conclusions of law which are filed herewith with the answers thereto.

### Decree.

And now, to wit, Oct. 11, 1927, upon consideration of the foregoing case, it is ordered, adjudged and decreed:

1. The plaintiff is entitled to partition of the lands described in the bill.

2. The matter is referred to ――――――, Esq., as master, to partition the land described in the bill according to the practice in equity.

And now, to wit, Oct. 11, 1927, the prothonotary is directed to notify the parties of the filing of this adjudication, and, unless exceptions are filed thereto within ten days, a final decree will be entered in accordance therewith.